IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DONALD WILKINS, | ) | CASE NO. 1:13 CV 638 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

# Introduction

**A.    Nature of the case and proceedings**

Before me[1] is an action by Donald Wilkins under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and

---

[1] ECF # 14. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 10.

[4] ECF # 11.

[5] ECF # 6.

procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

**B.     Background facts and decision of the Administrative Law Judge ("ALJ")**

Wilkins, who was 49 years old at the time of the hearing,[11] has an 11th grade education with a GED and has attended two years of college.[12] He previously worked as an extruder operator and as a telemarketer supervisor.[13]

The ALJ, whose decision became the final decision of the Commissioner, found that Wilkins had the following severe impairments: alcoholism, depression, and neuropathy of the feet.[14]

The ALJ initially concluded that Wilkins's impairments, with substance abuse, met or equaled a listing.[15] Nevertheless, if Wilkins stopped the substance abuse, his impairments

---

[6] ECF # 13.

[7] ECF # 21 (Commissioner's brief); ECF # 18 (Wilkins's brief).

[8] ECF # 21-1 (Commissioner's charts); ECF # 18-1 (Wilkins's charts).

[9] ECF # 17 (Wilkins's fact sheet).

[10] ECF # 23.

[11] Transcript ("Tr.") at 23.

[12] *Id.* at 38, 55.

[13] *Id.* at 54.

[14] *Id.* at 15.

[15] *Id.* at 16-18.

would not meet or equal a listing.[16] The ALJ, therefore, proceeded to make the following finding as to Wilkins's residual functional capacity ("RFC"):

> If the claimant stopped the substance abuse, the claimant would have the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he must use a cane, must have a sit and stand option but would not be off task, is limited to work with no greater than an SVP of 3, has no production quotas, no ladders, ropes or scaffolds, no hazardous machinery or unprotected heights, occasionally can stoop, bend, kneel and crouch and is not required to crawl.[17]

The ALJ then decided that if Wilkins stopped the substance use, he would be unable to perform his past relevant work as an extruder operator and supervisor telemarketer but would have the ability to perform a significant number of jobs in the national economy under the RFC as determined from the testimony of a vocational expert.[18]

The ALJ, therefore, found Wilkins not under a disability.[19]

**C.    Issues on judicial review**

Wilkins asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Wilkins presents the following issues for judicial review:

---

[16] *Id.*

[17] *Id.* at 19.

[18] *Id.* at 23.

[19] *Id.* at 25.

- Whether the ALJ's failure to recognize Wilkins's knee and ankle injuries as severe impairments was prejudicial to the analysis of his disability for purposes of the RFC.[20]

- Whether new and material evidence submitted to the Appeals Councils justifies remand.[21]

**D.     Disposition**

For the reasons that follow, I will conclude that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

## Analysis

**A.     Standard of review – new and material evidence**

The Sixth Circuit in *Sizemore v. Secretary of Health and Human Services*[22] discussed the standards applicable to a request for remand based on new evidence presented for the first time to the District Court. The Court emphasized that the party seeking remand bears the burden of showing the propriety of the remand under 42 U.S.C. § 405.[23] Section 405(g) requires that the new evidence must be "material" and that "good cause" exists for "failure to incorporate such evidence in a prior proceeding."

According to the *Sizemore* court, a claimant must demonstrate that there is a reasonable probability that the Commissioner would reach a different decision on the

---

[20] ECF # 18 at 11-13.

[21] *Id.* at 14-17.

[22] *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709 (6th Cir. 1988).

[23] *Id.* at 711.

disability claim based on new evidence to satisfy his burden as to materiality.[24] Evidence that merely shows that the claimant's condition has become aggravated or deteriorated since the Commissioner's decision will not satisfy the burden because "such evidence does not demonstrate the point in time that the disability itself began."[25]

**B.   Application of standard**

Wilkins acknowledged at the oral argument in this case that the ALJ did consider his knee and ankle impairments in formulating the RFC, and so the RFC has the support of substantial evidence when viewed from the perspective of the record at the time of the decision. Indeed, the ALJ gave controlling weight to the opinion of Danae Lowell, M.D., Wilkins's treating podiatrist, and the decision specifically states that "the residual functional capacity given is consistent with Dr. Lowell's opinion."[26] Furthermore, as pointed out by the Commissioner, Dr. Lowell's opinion as to any functional limitations arising from Wilkins's knee and ankle impairments is itself consistent with and supported by two contemporaneous x-ray studies and the opinion of Sushil Sethi, M.D., an evaluating physician.[27]

Accordingly, Wilkins's decision to center this appeal only on the claim that new evidence warrants a so-called sentence six remand is appropriate.

---

[24] *Id.*

[25] *Id.* at 712.

[26] Tr. at 23.

[27] ECF # 21 at 14-16 (citing transcript).

There is no dispute that the evidence cited by Wilkins is clearly new, in that it represents records of examinations that post-date the hearing before the ALJ.[28] Further, the Commissioner does not dispute Wilkins's contention that these records were promptly filed with the Appeals Council as soon as they became available, and so good cause has been shown for why the records were not in the record that was before the ALJ at the time the decision was issued.[29] Thus, the decisive question as to a remand is whether this new evidence is material; that is, whether there is a reasonable likelihood that this new evidence would have changed the ALJ's decision.

The records in question are from various examinations at the VA, from June 28, 2011 through August 12, 2012.[30] More specifically, as noted, Wilkins cites to six records in 2011 post-dating the June 16 decision as the relevant new evidence to be considered.[31] Using

---

[28] *See*, ECF # 21 at 17 (listing dates). I note that although Wilkins seems to claim that records of x-rays of his knee from March 11, 2011, and from a visit to the VA podiatry clinic on March 16, 2011, are new and should be considered in deciding whether a sentence six remand is warranted (ECF # 18 at 8-9), these records were before the ALJ, who discussed the RFC evaluation done by Dr. Lowell as a result of the March 16, 2011 visit. Tr. at 23.

[29] ECF # 18 at 16.

[30] *See*, Tr. at 2 (Appeals Council decision citing material it reviewed). *But see*, ECF # 18 (Wilkins's brief) at 15 (citing six records – August 18; September 9; October 12, 20; and November 8, 23, 2011 – as constituting the new evidence justifying a remand).

[31] The Commissioner, however, claims that only records from five 2011 post-decision visits were submitted to the Appeals Council. ECF # 21 at 17. In that regard, the Commissioner does not include the November 8, 2011 visit, and further identifies the August visit as being on the 19th and not the 18th as Wilkins does. *Id.* In fact, the podiatry clinic evaluation was on August 17, with Dr. Donald Kushner signing the report the next day, the 18th. Tr. at 1576-81.

Wilkins's listing of the new evidence as a starting point, that evidence consists of the following:

1. August 18, 2011. This note is actually part of a series of examinations done from July 19 to August 18 that included dental, psychological, psychiatric and orthopedic examinations, as well as an examination in the podiatry clinic on the 17th.[32] The podiatry clinic note, from a visit on August 17, states that Wilkins was there for a follow-up on his previous fracture.[33] The conclusion was that Wilkins's condition was stable, although the fracture was "slow healing."[34] He was to proceed with the existing treatment plan and return after two months of using a bone stimulator.[35]

2. September 9, 2011. This is an extensive note[36] from Laura Rousch, a psychologist, who saw Wilkins for chronic pain management. The conclusion was that Wilkins should continue with out-patient treatment and join a men's chronic pain group.[37] The note also stated that Wilkins believed an August 19, 2011, steroid injection of his left knee was helpful in relieving pain "'to a degree,'" and that "he hopes to repeat it."[38]

3. October 12, 2011. The rheumatologist's report of that day noted that Wilkins had a long history of pain in his left knee, which was addressed in August, 2011, at the orthopedic clinic.[39] Wilkins now reported that his right knee bothered him while walking, likely because he had been

---

[32] Tr. at 1588.

[33] *Id.* at 1576.

[34] *Id.* at 1581.

[35] *Id.*

[36] *Id.* at 1551-54.

[37] *Id.* at 1553-54.

[38] *Id.* at 1551.

[39] *Id.* at 1518-19.

>favoring his left ankle over the past few years, and further reported that the right knee pain is "relieved by rest, gets worse as day goes on, some stiffness after sitting."[40] Wilkins was given a kenalog injection in the right knee – something which previously had provided some relief when given in his left knee – and was told to follow up in six weeks.[41] Fluid was also removed from the right knee at that time to relieve swelling.[42]

4. October 20, 2011. This is a follow up at the podiatry clinic on the year and a half old fracture of Wilkins's left fibula.[43] The physician's note states that Wilkins reported that the Arizona brace he has been wearing "relieves about half of his pain."[44] Wilkins's condition was determined to be stable, new x-rays were ordered, and Wilkins was told to return in a month.[45]

5. November 8, 2011. These are notes from a visit Wilkins made to the outpatient internal medicine clinic.[46] Wilkins received a flu shot[47] and answered a series of questions regarding his housing status, since he

---

[40] *Id.* at 1519.

[41] *Id.* at 1517-19. Wilkins statement in the brief that he was diagnosed with knee arthralgia and neuropathy on October 12, 2011 (ECF # 18 at 15) erroneously conflates two distinct notes from two different events. The comment cited in Wilkins's brief refers to a note entered by the psychologist moderating his pain clinic meeting the day before his rheumatology exam – *i.e.*, October 11, 2011 (Tr. at 1520) – and so is not part of Dr. Donald Anthony's notes from Wilkins's rheumatology examination on October 12, 2011. The psychologist who entered the note on a diagnosis does not give a source for that diagnosis.

[42] Tr. at 1516.

[43] *Id.* at 1506-12.

[44] *Id.* at 1507.

[45] *Id.* at 1512.

[46] *Id.* at 1498-1503.

[47] *Id.* at 1503.

wished to move to another floor in his current building.[48] The physician's notes indicate that Wilkins's "[k]nees [are] a bit better," but his left shoulder range of motion has diminished "since two months ago when he noticed pain when going to pull the handle on a bus."[49] After refilling his prescriptions, the doctor referred Wilkins to a rheumatologist for his shoulder pain and made a note to speak with his "mental health team" regarding Wilkins's request to move to a different floor.[50]

6. November 23, 2011. At this visit to the rheumatology clinic, the doctor's notes state that Wilkins was there for "evaluation/tx of knee arthritis."[51] They further state that the prior August kenalog injection of the left knee provided some benefit, although "50% [of] that has waned, though [it] is still better than before the injection."[52] The note further states that the 75% benefit to the right knee of the October kenalog injection is now reduced to 25% improvement.[53] The note also mentioned the pain in Wilkins left shoulder, which it stated had been there for two months without either prior treatment or improvement.[54]

Wilkins was treated with a kenalog injection to his left shoulder and his left knee.[55]

He was told to return in three months for follow up, when perhaps a series of hyalgan

---

[48] *Id.* at 1502-03.

[49] *Id.* at 1501.

[50] *Id.* at 1502.

[51] *Id.* at 1491.

[52] *Id.*

[53] *Id.*

[54] *Id.*

[55] *Id.* at 1489-90.

treatments for "one or both knees [would be done] depending on the response [to the treatment administered on that day]."[56]

Wilkins essentially argues that the evidence summarized above documents that the ALJ "erred in failing to recognize Mr. Wilkins knee and ankle impairments as severe," since the evidence documents that they significantly affected Wilkins's "functioning and degree of pain."[57] Moreover, he argues, the new evidence "proves that [Wilkins's] lower extremities were more severely impaired then [sic] realized with osteonecrosis of the left ankle and right knee."[58]

As discussed, the relevant test for remanding a matter for consideration of new evidence is whether that evidence is material; *i.e*., whether the Commissioner would have reached a different result on the disability claim if presented with the new evidence. Here, as the final physician's note from the rheumatology clinic visit of November 23, 2011, itself makes clear, Wilkins was receiving ongoing treatment for pain in both his knees that showed measurable success, subject to the injections wearing off over time. Further, there is no indication in any of the post-hearing notes that these chronic conditions were misunderstood or mischaracterized by the ALJ, or that their functional effects were misrepresented. Rather, the notes actually show that Wilkins received additional pain relief from the knee injections beyond that which he experienced at the time of the hearing.

---

[56] *Id.* at 1492.

[57] ECF # 18 at 16.

[58] *Id.*

In addition, even if the new diagnosis in July, 2011, of osteonecrosis[59] itself proves that the Commissioner would necessarily reach a different result, "'[r]eviewing courts have declined to remand disability claims for reevaluation in light of medical evidence of a deteriorated condition.'"[60] Instead, in such situations where a claimant's condition has significantly deteriorated, the appropriate remedy is to institute a new claim for benefits "'as of the date the condition aggravated to the point of constituting a disabling impairment.'"[61]

Because, at best, Wilkins has presented an argument that his condition has worsened since the decision of the ALJ in June, 2011, there is no basis for ordering a remand under sentence six.

## Conclusion

Substantial evidence supports the finding of the Commissioner that Wilkins had no disability. Accordingly, the decision of the Commissioner denying Wilkins disability insurance benefits and supplemental security income is affirmed.

IT IS SO ORDERED.

Dated: May 12, 2014                     s/ William H. Baughman, Jr.
                                        United States Magistrate Judge

---

[59] The ALJ's decision was in June of 2011.

[60] *Deloge v. Comm'r of Soc. Sec.*, 540 F. App'x 517, 518 (6th Cir. 2013) (quoting *Sizemore*, 865 F.2d at 711).

[61] *Deloge*, 540 F. App'x at 518-19 (quoting *Sizemore*, 865 F.2d at 712).